**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HONG KONG LEYUZHEN TECHNOLOGY CO. LIMITED,<br><br>        Plaintiff,<br><br>    v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO,<br><br>        Defendants. | **Case No. 1:24-cv-01547**<br><br>**Honorable Judge Andrea R. Wood**<br><br>**Magistrate Jeffrey Cole**<br><br>FIRST AMENDED MOTION FOR TEMORARY RESTRAINING ORDER |

## PLAINTIFF'S FIRST AMENDED *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION

Plaintiff Hong Kong Leyuzhen Technology CO. Limited, ("Plaintiff"), by and through its counsel, the Bayramoglu Law Offices, LLC, submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and service of process by e-mail and/or electronic publication (the "*Ex Parte* Motion"). The *Ex Parte* Motion is made and based upon the arguments presented herein, the supporting Declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), together with any argument or other materials considered by the Court.

i

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ...................................................................................................4

A. Plaintiff's Intellectual Property and Products...................................................................4

B. Defendants' Unlawful Activities .......................................................................................4

1. Defendants Operate Misleadingly Legitimate-Looking Online Stores. ............................5

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines. .........................6

3. Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down. ...................6

4. Defendants Use Common Tactics to Evade Enforcement...................................................7

III. ARGUMENT ......................................................................................................................9

A. This Court Can Exercise Personal Jurisdiction Over Defendants. .......................................11

B. Applicable Temporary Restraining Order and Preliminary Injunction Standards. ................13

C. Plaintiff Will Likely Succeed on the Merits. ...................................................................14

1. Plaintiff Will Likely Succeed on Its Copyright Infringement Claim. ..................................14

2. Because It Is Clear Defendants Have Copied The Asserted Brand Copyrights Without Authorization. Plaintiff is Likely to Succeed on Its False Designation of Origin Claim. ...............16

3. Plaintiff is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim...............17

D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm Without Issuance of Injunctive Relief. ...................................................................................18

E. The Balancing of Equities Tips in Plaintiff's Favor..........................................................20

F. Issuance of the Injunction is in the Public Interest. ..........................................................21

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.................................................21

A. Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. ...................................................................22

B. Preventing the Fraudulent Transfer of Assets Is Necessary. ..............................................23

C. Plaintiff Is Entitled to Expedited Discovery.....................................................................25

D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case. ........26

V. A MINIMAL BOND SHOULD BE REQUIRED TO SECURE THE REQUESTED INJUNCTIVE RELIEF...................................................................................................31

VI. CONCLUSION ..................................................................................................................32

ii

PLAINTIFF'S FIRST AMENDED MOTION FOR          CASE NO. 1:24-cv-01547-ARW-JC
TEMPORARY RESTRAINING ORDER

## TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Mead Johnson & Co.*,
971 F.2d 6 (7th Cir. 1992)........................................................................................13

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007)............................................................................23

*Bluestar Mgmt. LLC v. The Annex Club, LLC*,
No. 09-4540, 2010 WL 2802213 (N.D. Ill July 12, 2010) ............................................16

*Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A,"*,
2014 WL 3749132 (N.D. Ill. July 18, 2014)............................................................20

*Chrome Hearts LLC v. Identified on Schedule "A"*,
No. 1:15-CV-03491, 2015 WL 5307609 (N.D. Ill. Sept. 9, 2015)............................3

*Columbia Pictures Indus., Inc. v. Jasso*,
927 F. Supp. 1075 (N.D. Ill. 1996) ...........................................................................9

*Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*,
No.:1:19-cv-05907 (N.D. Ill. Sept. 10, 2019) ...................................................2, 11, 22

*Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*,
No. 1:18-cv-07531 (N.D. Ill. Nov. 20, 2018) ........................................................3, 11

*Eli Lilly & Co. v. Natural Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) ..................................................................................13

*Ent. One UK Ltd. v. 2012Shiliang*,
384 F. Supp. 3d 941 (N.D. Ill. 2019)........................................................................17

*Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
2020 WL 8093511 (N.D. Ill. Oct. 28, 2020)............................................................28

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340
S. Ct. 1282, 113 L. Ed. 2d 358 (1991)......................................................................13

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
35 F.3d 1134 (7th Cir. 1994)....................................................................................19

*GEFT Outdoors, LLC v. City of Westfield*,
922 F.3d 357 (7th Cir. 2019) ...................................................................................12

*Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A, Defendants.*,
2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ................................................................29

*Hay v. Indiana State Bd. of Tax Comm'rs*,
312 F.3d 876 (7th Cir. 2002) ....................................................................................24

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
560 F.2d 1325 (7th Cir. 1977) ..................................................................................18

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ....................................................................................31

*Horn Abbot Ltd. v. Sarsaparilla Ltd.*,
601 F.Supp. 360 (N.D. Ill. 1984) ........................................................................20, 21

*HyperQuest Inc. v. N'Site Solutions, Inc.*,
632 F.3d 377 (7th Cir. 2011) ....................................................................................13

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
612 F.2d 1018 (7th Cir. 1979) ..................................................................................19

*In re LDK Solar Secs. Litig.*,
2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ...........................................................30

*In re Vuitton et Fils, S.A.*,
606 F.2d 1 (2d Cir.  1979).......................................................................................... 3

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
765 F.Supp. 1310 (N.D. Ill. 1990)............................................................................20

*Jefferson v. Johnson Publishing, Inc.*,
1992 WL 318615 (N.D. Ill. Oct. 28, 1992) ..........................................................19, 21

*Juniper Networks, Inc. v. Bahattab*,
No. 1:07-cv-01771-PLF-AK WL 250584, (D.D.C. Jan. 30, 2008) .............................28

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ....................................................................................23

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
No. 1:08-cv- 02593  WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) ..................................28

*Microsoft Corp. v. 9038-3746 Quebec, Inc.*,
2007 WL 3232465 (N.D. Ohio, Nov. 1, 2007) ..........................................................23

*Monster Energy Company v. Wensheng*,
136 F.Supp.3d 897  (N.D.  Ill.  2015).........................................................................11

iv

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ................................................. 30

*Oppenheimer Fund, Inc. v. Sanders,*
437 U.S. 340
98 S. Ct. 2380 (1978) ................................................................................................................... 24

*Peters v. West*,
692 F.3d 629 (7th Cir. 2012) ....................................................................................................... 13

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
225 F.R.D. 560 (E.D. Tenn. 2004) ......................................................................................... 28, 30

*Promatek Industries, Ltd. v. Equitrac Corp.*,
300 F.3d 808 (7th Cir. 2002) ....................................................................................................... 19

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003) .................. 11

*Rathmann Grp. v. Tanenbaum,*
889 F.2d 787 (8th Cir. 1989) ....................................................................................................... 31

*Re/Max N. Cent., Inc. v. Cook*,
272 F.3d 424 (7th Cir. 2001) ....................................................................................................... 18

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) ....................................................................................................... 23

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ................................................................................................ 27, 28

*Rodriguez v. Plymouth Ambulance Serv.*,
577 F.3d 816 (7th Cir. 2009) ....................................................................................................... 24

*Spex, Inc. v. Joy of Spex, Inc.*,
847 F. Supp. 567 (N.D. Ill. 1994) ............................................................................................... 17

*Spinmaster, Ltd. v. Overbreak LLC*,
404 F.Supp.2d 1097 (N.D. Ill. 2005) .......................................................................................... 18

*Square One Entertainment Inc. v. Identified in Schedule "A", Defendants.*,
No. 20 C 5685, 2021 WL 1253450 (N.D. Ill. Apr. 5, 2021) .................................................. 9, 11

*Strabala v. Zhang*,
318 F.R.D. 81 (N.D. Ill. 2016) .................................................................................................... 28

*Ty, Inc. v. GMA Accessories, Inc.*,
132 F.3d 1167 (7th Cir. 1997) ..................................................................................................... 18

*Ty, Inc. v. The Jones Group, Inc.*,

v

237 F.3d 891 (7th Cir. 2001) ...............................................................................12, 20

*uBID, Inc. v. GoDaddy Group, Inc.*
623 F.3d 421 (7th Cir. 2010)..................................................................................11

*USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.,*
402 F. Supp. 3d 427 (N.D. Ill. 2019)...............................................................12, 18

*Vance v. Rumsfeld,*
No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007)..........................24

*ZURU (Singapore) Pte., Ltd et al v. Identified on Schedule A Hereto,*
No.: 1-21-CV- 02180, (N.D. Ill. April 27, 2021)........................................2, 11, 22, 31

   Statutes

15 U.S.C. § 1125.............................................................................................10, 15

17 U.S.C. § 101..............................................................................................10, 14

17 U.S.C. § 501..............................................................................................13, 14

17 U.S.C. § 503.....................................................................................................21

17 U.S.C. § 504...................................................................................................3, 23

17 U.S.C. §§ 502...........................................................................................18, 21

28  U.S.C.  §  1331 ................................................................................................10

28 U.S.C. § 1367..................................................................................................10

28 U.S.C. §§ 1391................................................................................................10

   Rules

Fed. R. Civ. P. 26.................................................................................................24

Fed. R. Civ. P. 4 ..................................................................................................27

Fed. R. Civ. P. 65...........................................................................................passim

PLAINTIFF'S FIRST AMENDED MOTION FOR                    CASE NO. 1:24-cv-01547-ARW-JC
TEMPORARY RESTRAINING ORDER

## INTRODUCTION

Plaintiff brings this action against the Defendants identified on Schedule A to the Complaint ("Defendants") for copyright infringement (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). As alleged in the Complaint, Defendants are unlawfully using Plaintiff's federally registered copyrighted photographs and 3-D artwork (the "Asserted Brand Copyrights") to promote, advertise, market, distribute, offer for sale, and sell knockoff products using the brand associated with the Asserted Brand Copyrights (the "Asserted Brand") through the online marketplace accounts maintained on the eBay platform listed in Schedule "A" (the "Online Platform") to the Complaint ("Defendants' Online Stores"). In short, Defendants run a knockoff Asserted Brand sales operation that is predicated on the unauthorized use of the Asserted Brand Copyrights.

Defendants create numerous stores on the Online Platform, including those identified in Schedule "A" to the Complaint, with an intent to use Plaintiff's Asserted Brand Copyrights to sell their products. Defendants' Online Stores share unique identifiers, including their common use of the Asserted Brand Copyrights, and suggesting that Defendants' knockoff operations are somehow sanctioned by Plaintiff, when they are not. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their operations. Plaintiff has filed this action to combat Defendants' infringement of the Asserted Brand Copyrights, as well as to protect unknowing consumers from purchasing knockoff products of poor quality.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell knockoff products to consumers within the United States, including the State of Illinois, by using the Asserted Brand Copyrights without authorization to do so from Plaintiff. Specifically,

1

Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet-based stores through which Illinois residents can purchase knockoff Asserted Brand products being sold using, without authorization, Plaintiff's Asserted Brand Copyrights. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff's Asserted Brand. Furthermore, Defendants deceive the public by trading upon the reputation and goodwill of Plaintiff's Asserted Brand by misappropriating its copyrighted work for use in Defendants' O n l i n e Stores to sell and/or offer for sale inferior products at a fraction of the price.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order (the "TRO"). Specifically, Plaintiff seeks an order: (1) temporarily restraining Defendants' continued misappropriation of Plaintiff's Asserted Brand Copyrights for the manufacture, importation, distribution, offering for sale, and sale of Defendants' knockoff products; (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting; ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to Defendants' financial accounts; and (4) authorize service by electronic mail and/or electronic publication.

Given the covert nature of offshore knockoff and copyright infringing activities and the vital need to establish an economic disincentive for such conduct, courts regularly issue such orders. *See, e.g., ZURU (Singapore) Pte., Ltd et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto,* No.: 1-21-CV- 02180, Document # 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS copyrighted works and trademarks); *Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*

*Hereto*, No.:1:19-cv-05907, Document # 17 (N.D. Ill. Sept. 10, 2019) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS trademark); *Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:18-cv-07531, Document # 16 (N.D. Ill. Nov. 20, 2018) (Durkin, J.) (same); *see also Chrome Hearts LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 1:15-CV-03491, 2015 WL 5307609 (N.D. Ill. Sept. 9, 2015) (denying defendant's motion to intervene in same case as above); *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establish that issuing a temporary restraining order against Defendants is necessary and proper. First, Plaintiff's *Ex Parte* Motion demonstrates the company has a strong likelihood of success on the merits of its claims. Plaintiff is the owner of the federal copyright registrations which are set forth in Exhibit 1 to and Complaint. Plaintiff is also the sole distributor of genuine Asserted Brand products, and Defendants' unauthorized use of the Asserted Brand Copyrights to sell competing knockoff products is causing consumer confusion.

In addition, Defendants have, and continue to, irreparably harm Plaintiff through diminished goodwill and damage to the Asserted Brand's reputation. Monetary damages are inadequate to compensate Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter and at this time.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing inferior products through Defendants' misappropriation of Plaintiff's Asserted Brand Copyrights. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active

concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504. Finally, an order authorizing service of process by e-mail and/or electronic publication is proper because of Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## STATEMENT OF FACTS

**Plaintiff's Intellectual Property and Products**

Plaintiff is the registered owner of the copyrights listed in Exhibit 1 to the Complaint, which comprise the Asserted Brand Copyrights. Since at least 2009, the Asserted Brand is, and has been, the subject of substantial and continuous marketing and promotion by Plaintiff. ( Mangano Decl. ¶ 11.)

Plaintiff has, and continues to, widely market and promote the Asserted Brand in the industry and to consumers. (*Id.*) Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the Asserted Brand. (*Id.*) As a result, the Asserted Brand is widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Plaintiff. (*Id.*) Plaintiff owns all exclusive rights for the Asserted Brand Copyrights listed in Exhibit 1 to the Complaint. (*Id.* ¶ 9.) However, the success of the Asserted Brand has resulted in its significant counterfeiting. (*Id.* ¶ 12.)

**Defendants' Unlawful Activities**

Plaintiff has identified the Defendants' Online Stores in Schedule "A" attached to the Complaint that use, without authorization, the Asserted Brand Copyrights to promote, offer for

sale, and sell inferior quality products from foreign countries to consumers in the United States and within this judicial district. (Mangano Decl. ¶ 12; Compl. Ex. 2.) Internet websites like Defendants' Online Stores are estimated to receive tens of millions of visits per year and cost legitimate businesses billions in lost revenue annually. (Mangano Decl. ¶ 4, Ex. 1.) According to intellectual-property-rights seizures-statistics reports issued by Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. (*Id.* ¶ 5, Ex. 2.) Internet websites like Defendants' Online Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*Id., Ex. 3.*)

**Defendants Operate Misleadingly Legitimate-Looking Online Stores.**

Counterfeiters and those passing off knockoff goods in similar cases typically facilitate sales by designing Internet stores that appear to be authorized online retailers, outlet stores, or wholesalers to unknowing and unsuspecting consumers. (Mangano Decl. ¶ 15.) Internet stores, such Defendants' Online Stores, accept common forms of payment in United States currency such as credit cards, GooglePay, Apple Pay, and/or PayPal. (*Id.*) They also often include images and design elements that make it very difficult for consumers to distinguish these illegitimate sites from authorized websites. (*Id.*) In this case, Defendants' Online Stores additionally display numerous Asserted Brand Copyrights, without authorization to do so, for the purpose of selling and offering for sale their knockoff products as genuine Asserted Brand products. (*Id.*) To be crystal clear, Defendants have no right to display the Asserted Brand Copyrights for any purpose whatsoever and are not, and have never been, authorized Asserted Brand retailers in any capacity. (*Id.*)

**Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines.**

Defendants in similar copyright infringement cases typically deceive unknowing consumers by using the images and 3-D Artwork without authorization within the images, content, text, and/or meta tags of their Internet stores advertising and/or selling competing products to attract various search engines crawling the Internet looking for websites relevant to consumer searches. (Mangano Decl. ¶ 16.) Additionally, Defendants in similar cases typically use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that Defendants' listings show up at or near the top of relevant search results and misdirect consumers to their illegitimate websites. (*Id.*) Further, Defendants typically utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. (*Id.*) In short, Defendants use these technological tactics and misappropriated intellectual property rights to promote their illegitimate websites at the expense of unsuspecting consumers and legitimate companies. (*Id.*)

**Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down.**

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet stores. (Mangano Decl. ¶ 17.) For example, many of the names and physical addresses used to register the Defendants' Online Stores are incomplete, contain randomly typed letters, or fail to include cities or states. (*Id.*) Other Defendant domain names use privacy services that conceal the owners' identity and contact information. (*Id.*) Defendants also regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule " A", as well as other unknown fictitious names and addresses. (*Id.*; Compl. Ex. 2.) Such Internet store

6

registration patterns are one of the many common tactics used by the wrongdoers, such as the Defendants, to conceal their identities, the full scope and interworking of their massive counterfeiting operations, and to evade enforcement efforts. (Mangano Decl. ¶ 17.)

Even though Defendants operate under multiple fictitious names, there are numerous similarities among Defendants' Online Stores. (*Id.*) For example, Defendants' websites use, without authorization, the Asserted Brand Copyrights in similar or substantially similar ways to sell knockoff products of inferior quality at the same or similar pricing as offered by Plaintiff for its original and authentic goods. (Mangano Decl. ¶ 18.) Knockoff Asserted Brand products for sale in Defendants' Online Stores bear similar irregularities and indicia of being related to one another, suggesting that the Defendants' lesser quality products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. (*Id.*) Defendants' online stores in similar cases, also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, user-defined variables, domain redirection, lack of contact information, identically or similarly priced hosting services, similar name servers, and the use of the same text and images. (*Id.*) In this case, those similar images are the federally protected and infringed Asserted Brand Copyrights.

**Defendants Use Common Tactics to Evade Enforcement.**

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters and knockoff purveyors, use a variety of other common tactics to evade enforcement efforts. (Mangano Decl. ¶ 19.) For example, Defendant counterfeiters and knockoff sellers will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. (*Id.*)

7

Counterfeiters and knockoff sellers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. (*Id.*) Additionally, counterfeiters and knockoff sellers typically operate multiple credit card merchant accounts, such as PayPal, hidden behind layers of payment gateways so that they can continue operation despite rigorous enforcement efforts. (*Id*. ¶ 20.) Furthermore, Defendants typically thwart enforcement efforts by maintaining offshore bank accounts and regularly moving funds from their third-party platform seller accounts to these offshore accounts because they are outside the jurisdiction of this Court. (*Id.*)

Moreover, Plaintiff suspects that given the nature of the counterfeit products being sold, which are promoted using an extensive array of the company's copyright protected images throughout a network of thousands of alleged infringers, that this is a highly sophisticated and coordinated counterfeit operation whereby all online platform stores are provided with illegal, substandard, knockoff products produced from one or more central textile manufacturing facilities. In short, the named Schedule "A" Defendants lack the resources, ability, and capacity to manufacture the degree of counterfeit products being distributed through their associated online sales platforms without the support of a larger, criminal organization/network. (Mangano Decl. ¶ 21.)

Overall, Plaintiff's evidence presented with this *Ex Parte* Motion establishes registration patterns, similarities among the Defendants' Online Stores, Defendants' shared infringement of the Asserted Brand Copyrights, and the common tactics employed to evade enforcement establish a logical relationship among the Defendants and suggest that they are an interrelated group of knockoff sellers. Upon information and belief, Defendants are working in active concert to knowingly and willfully misappropriate Plaintiff's Asserted Brand Copyrights to, at least, distribute, offer for sale, and sell products in connection with Defendants' knockoff versions of

8

Asserted Brand products in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their knockoff operations make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' knockoff peddling network, including the interrelationship among the Defendants.

## ARGUMENT

Defendants' purposeful, intentional, and unauthorized use of Plaintiff's Asserted Brand Copyrights is causing, and will continue to cause, irreparable harm to Asserted Brand's reputation and associated goodwill. (Mangano Decl. ¶ 22.) To stop Defendants' willful infringement of the Asserted Brand Copyrights, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the freezing of Defendants' assets. Without the relief requested by Plaintiff's *Ex Parte* Motion, Defendants' unlawful activity will continue unabated, and the company and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure ("Rule 65(b)") authorizes the Court to issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Defendants here willfully and without authorization use the Asserted Brand Copyrights to promote, advertise, offer to sell, and sell competing, poor quality goods through Defendants' Online Stores. (Mangano Decl. ¶ 27.) Defendants are creating a false association in the minds of consumers between their illegitimate knockoff websites and the authorized, legitimate Asserted Brand retailers by deceiving consumers through, among other things, the unauthorized display of the Asserted Brand Copyrights. (*Id.*) These circumstances justify entry of a temporary restraining order to immediately stop the

9

Defendants from improperly benefiting from their unauthorized use of the Asserted Brand Copyrights and preserve the status quo until a hearing can be held in this matter.

Absent entry of a temporary restraining order without notice, Defendants can, and likely will, modify registration data and content, change hosts, redirect traffic to other websites under their control, and/or move any assets from U.S.-based bank accounts to offshore accounts. (*Id.* ¶ 28.) Courts in this judicial district have recognized that civil actions against counterfeiters and knockoff sellers present special challenges that justify entry of injunctive relief on an *ex parte* basis. *See, e.g.*, *Square One Entertainment Inc. v. The Partnerships and Unincorporated Associations Identified in Schedule "A", Defendants.*, No. 20 C 5685, 2021 WL 1253450, at *1 (N.D. Ill. Apr. 5, 2021) (Durkin, J.) ("[D]istrict courts often agree, that it is necessary to restrain the defendants' assets without notice in order to prevent them from removing their assets from the United States or otherwise hiding them."); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested temporary restraining order on an *ex parte* basis.

There can be no doubt that this Court has federal subject matter jurisdiction over this action. Specifically, this Court has original subject matter jurisdiction over the Plaintiff's copyright infringement claim. *See* 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1338(a)– (b); 28 U.S.C. § 1331. This Court also has original subject matter jurisdiction over Plaintiff's false designation of origin claims pursuant to 15 U.S.C. § 1125. This Court has jurisdiction over Plaintiff's state law unfair deceptive trade practices claim pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is additionally proper in this judicial district pursuant

to 28 U.S.C. §§ 1391 and 1400.

**This Court Can Exercise Personal Jurisdiction Over Defendants.**

This Court can properly exercise personal jurisdiction over Defendants because their unauthorized and infringing conduct directly targets consumers in the United States, including in the State of Illinois, by directly offering for sale knockoff products using Plaintiff's Asserted Brand Copyrights through their illegitimately operated online stores. (Mangano Decl. ¶¶ 12-13.) Specifically, Defendants are reaching out to do business with residents of the State of Illinois by operating one or more commercial, interactive Internet stores through which these residents can purchase knockoff products based upon the unauthorized use and display of the Asserted Brand Copyrights. (Mangano Decl. ¶¶ 12-13.) Moreover, each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including to the State of Illinois, has offered to sell, and on information and belief, has sold and continues to sell their knockoff products to consumers within the United States, including the within the State of Illinois. (Mangano Decl. ¶¶ 12-13; Compl. ¶¶ 3, 6, 14, 24–25.) Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction, the company's asserted facts should be accepted as true, and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also, Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a Plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

More specifically, the Northern District of Illinois regularly exercises personal jurisdiction over websites using registered copyrights and/or trademarks without authorization

in connection with the offering for sale and selling of knockoff and counterfeit merchandise to Illinois residents over the Internet. *See, e.g., Monster Energy Company v. Wensheng*, 136 F.Supp.3d 897, 902-909 (N.D. Ill. 2015); *Square One Entertainment*, 2021 WL 1253450, at \*1; *ZURU (Singapore) Pte., Ltd et al v The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto,* No.: 1-21-CV- 02180, Document # 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS copyright protected works and trademarks); *Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No.:1:19-cv- 05907, Document # 17 (N.D. Ill. Sept. 10, 2019) (granting orders requested herein in similar case involving plaintiff's BUNCH O BALLOONS trademark); *Creative Impact Inc. et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:18-cv-07531, Document #: 16 (N.D. Ill. Nov. 20, 2018) (Durkin, J.) (same).

As stated earlier, through at least Defendants' Online Stores, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell their imitation products to residents of the United States, including within the State of Illinois. (Mangano Decl. ¶¶ 12-13; Compl. ¶¶ 3, 6, 14, 24–25.) As such, each of the Defendants is committing tortious acts in the State of Illinois, while engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. Specifically, as shown on the screenshot printouts showing the unauthorized display of the Asserted Brand Copyrights in connection with the Defendants' offers to sell the knockoff Asserted Brand products, Plaintiff has confirmed that these inferior products

are available to be shipped to Illinois residents and residents within this judicial district. (Mangano Decl. ¶ 14, Ex. 7.)

**Applicable Temporary Restraining Order and Preliminary Injunction Standards.**

District courts within this Circuit hold that the standards applicable to granting a temporary restraining order and to granting a preliminary injunction are identical. *See, e.g., USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (citing cases). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if injunctive relief is granted by balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *See Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *See Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what has been deemed "the sliding scale approach"—the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need

be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Proper application of the foregoing standards to Plaintiff's *Ex Parte* Motion justifies entry of injunctive relief.

**Plaintiff Will Likely Succeed on the Merits.**

**Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991); *see also Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012).

Here, Plaintiff is likely to succeed on the merits of its copyright infringement claim. First, Plaintiff owns all exclusive rights to the Asserted Brand Copyrights covered by, at least, the United States federal copyright registrations listed in Exhibit 1 to the Complaint (Mangano Decl. ¶ 9, Compl. Ex. 1). *See* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement); *HyperQuest Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011) (noting § 501(b) provides that the holder of an exclusive license to distribute a particular work can sue under the Copyright Act).

Second, Plaintiff has shown that Defendants have made unauthorized copies of the federally registered Asserted Brand Copyrights. Specifically, Defendants use, without authorization, the Asserted Brand Copyrights to unknowingly attract and deceive consumers to their online stores to sell, and offer for sale, knockoff Asserted Brand products. (Mangano Decl. ¶ 16.) It is beyond question that Defendants have directly copied the Asserted Brand Copyrights to promote their inferior quality products on their online stores. This clearly constitutes the unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of the

14

Asserted Brand Copyrights in violation of the exclusive rights granted under 17 U.S.C. § 101 et seq. (*Id.* ¶ 14, Ex. 7.)

As exemplary examples, Defendants deceive unknowing consumers by using the Asserted Brand Copyrights without authorization on their online stores to attract customers as follows:

<u>Examples of the Unauthorized Use of the Asserted Brand Copyrights</u>

<u>on Defendants' Online Stores</u>



*Compared to*

<u>Plaintiff's Use of the Genuine Asserted Brand Copyrights on the Company Website</u>



In sum, Plaintiff stands an extremely high likelihood of success on its copyright infringement claim. Plaintiff has demonstrated that it is the rightful owner of federally registrations in and to the Asserted Brand Copyrights. It has also clearly demonstrated the Defendants' unauthorized use and display of the Asserted Brand Copyrights in connection with their display, sale, or offers for sale, of knockoff Asserted Brand products on their online stores. Accordingly,

PLAINTIFF'S FIRST AMENDED MOTION FOR      CASE NO. 1:24-cv-01547-ARW-JC
TEMPORARY RESTRAINING ORDER

Plaintiff has satisfied the likelihood of success requirement for entry of the requested injunctive relief.

**Because It Is Clear Defendants Have Copied the Asserted Brand Copyrights Without Authorization. Plaintiff is Likely to Succeed on Its False Designation of Origin Claim.**

As demonstrated above, Plaintiff has established the Defendants have copied the Asserted Brand Copyrights without authorization to display, sell, and offer for sale knockoff Asserted Brand products on their online stores. This unquestionably establishes that Plaintiff has an extremely high likelihood of success on its copyright infringement claim, which should independently satisfy the Court's analysis under the first prong for entitlement to injunctive relief. Should a further showing be required, Plaintiff also has a high likelihood of success on the merits of its false designation of origin claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A) must show: "(1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation." *Bluestar Mgmt. LLC v. The Annex Club, LLC,* No. 09-4540, 2010 WL 2802213, *4 (N.D. Ill July 12, 2010) (internal quotations and citations omitted).

Because Plaintiff has established a likelihood of success on the merits of its copyright infringement claim, it is clearly demonstrated that Defendants have falsely designated the origin or description of the products at issue in this case, thereby satisfying the first requirement necessary for succeeding on its false designation of origin claim. Next, there can be no question that Defendants' goods have entered interstate commerce, which is exactly the reason why they have engaged in the unauthorized use of the Asserted Brand Copyrights on their online stores – to sell

their substandard, knockoff goods to United States residents and residents of the State of Illinois – thereby satisfying the second requirement for Plaintiff succeeding on its false designation claim. (Mangano Decl. ¶¶ 12-13; Compl. ¶¶ 3, 6, 14, 24–25.) Finally, there can also be no question that Plaintiff would be harmed by the unauthorized use of the Asserted Brand Copyrights, thereby satisfying the third and final requirement for success on the company's false designation of origin claim. (*Id.* ¶¶ 23-27.) In sum, Plaintiff has demonstrated a high likelihood of success on the merits of its false designation of origin claim. Accordingly, this claim for relief further establishes that Plaintiff has independently satisfied the likelihood of success on the merits through its false designation of origin claim necessary to justify entry of the injunctive relief requested.

**Plaintiff is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim.**

Plaintiff has demonstrated, above, that it stands a high likelihood of success on the merits of its copyright infringement and false designation of origin claims for relief, which independently or together, satisfy the first analysis prong for entry of the injunctive relief requested. Despite the considerable merit of these previously discussed claims, Plaintiff also has a high likelihood of success on the merits of its Illinois deceptive trade practices claim.

In Illinois, courts resolve unfair competition and deceptive trade practices claims, "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *See Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 952 (N.D. Ill. 2019).

As previously demonstrated, Plaintiff has established a likelihood of success on the merits of its copyright infringement and false designation of origin claims against Defendants. These standards are equally applicable under Illinois law. Accordingly, Plaintiff has established a high likelihood of success on the merits of its Illinois Uniform Deceptive Trade Practices Act claim. Accordingly, this claim, alone, satisfies the first analysis prong required to justify issuance of the requested injunctive relief.

**There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm Without Issuance of Injunctive Relief.**

Plaintiff will unquestionably suffer irreparable harm unless this Court issues the requested injunctive relief. Defendants are unquestionably using Plaintiff's federally protected copyrights to promote, display, sell, and offer for sale their own inferior, knockoff products – deceiving unknowing customers in the process and harming the company's established goodwill in the process. (Mangano Decl. ¶¶ 23-27.)

While loss of goodwill is "more commonly associated with trademark cases, [ ] it is applicable to copyright as well." *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1173 (7th Cir. 1997). Thus, damage to a copyright holder's goodwill "is unquantifiable and therefore irreparable." *Spinmaster, Ltd. v. Overbreak LLC*, 404 F.Supp.2d 1097, 1111 (N.D. Ill. 2005); *see also USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 437 (N.D. Ill. 2019) (quoting *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("The Seventh Circuit has 'repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.'")); 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by defendants of their infringing work and that any of defendants' infringing products be impounded and

destroyed). A plaintiff with a copyright infringement claim "has the right to protect their reputation as well as their sales from infringers." *Spinmaster*, 404 F.Supp.2d at 1111.

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The Seventh Circuit and other courts have held that 'the most corrosive irreparable harm' attributable to copyright infringement is the victim's inability to control the nature and quality of the infringer's goods." *Jefferson v. Johnson Publishing, Inc*., 1992 WL 318615, *2 (N.D. Ill. Oct. 28, 1992) (citing cases). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the Asserted Brand Copyrights has, and continues to, irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to the Asserted Brand's reputation, loss of exclusivity, and loss of future sales. (Mangano Decl. ¶¶ 23-27.) The extent of harm to the Asserted Brand's reputation and goodwill, and the possible diversion of customers due to loss in brand confidence, are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through issuance of immediate injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, that does not provide it with an adequate remedy at law if immediate, and *ex parte,* injunctive relief is not issued under Rule 65(b). (Mangano Decl.

¶¶ 23-27.) As such, Plaintiff has satisfied the irreparable harm requirement necessary for issuance of the injunctive relief requested.

**The Balancing of Equities Tips in Plaintiff's Favor.**

As noted above, Plaintiff has demonstrated that it has (1) a high likelihood of success on the merits of each of its asserted claims for relief in this action, (2) it has no adequate remedy at law, and (3) the threat of irreparable harm if injunctive relief is not granted. As such, the Court must then consider the harm that Defendants will suffer if injunctive relief is granted, balancing such harm against the irreparable harm the company will suffer if relief is denied. *See Ty, Inc.*, 237 F.3d at 895. This final analysis prong further supports Plaintiff's request for issuance of injunctive relief.

Courts in this judicial district have recognized that willful infringers are not entitled to equitable considerations when analyzing their conduct. *Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A,"*, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014). Where the evidence shows that a defendant "has knowingly engaged in infringing activities as a regular feature of its business," the effect of an injunction on a defendant's business is given little equitable consideration. *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1332 (N.D. Ill. 1990); *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F.Supp. 360 (N.D. Ill. 1984) (to consider a "blatant" copyright infringer's argument "that an injunction will put them out of business, is to pervert the meaning of the balance of hardships test"). As Plaintiff has demonstrated, Defendants have been profiting from the willful and unauthorized use of the Asserted Brand Copyrights. (Mangano Decl. ¶¶ 12-13, 23-27.) Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct through issuance of the injunctive relief requested by Plaintiff.

20

**Issuance of the Injunction is in the Public Interest.**

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal copyright law. The public is currently under the false impression that Defendants are operating their online stores with Plaintiff's approval and endorsement and/or as authentic retailers of Asserted Brand products. An injunction serves the public interest in this case because "it will preserve the integrity of the copyright laws, which embody an important national policy of encouraging creativity." *ISC-Bunker Ramo Corp.*, 765 F.Supp. at 1332. Likewise, "the public plainly has an interest in preventing people from copying for commercial use the entire contents of a copyrighted work." *Horn Abbot*, 601 F.Supp. at 369; *Jefferson v. Johnson Pub., Inc*., 1992 WL 318615, *2 (N.D. Ill. Oct. 28, 1992) ("The public interest would certainly be disserved if defendants were permitted to continue to knowingly infringe plaintiff's [copy]rights.").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' blatant copying and use of the Asserted Brand Copyrights. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of copyrights used in connection with those goods and services. Unless Defendants' unauthorized use of Asserted Brand Copyrights is enjoined, the public will continue to be confused and misled by Defendants' conduct. (Mangano Decl. ¶¶ 23-27.) Accordingly, issuance of Plaintiff's requested injunctive relief is in the public interest.

## THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Copyright Act specifically authorizes courts to "grant temporary and final injunctions on such terms as it may

21

deem reasonable to prevent or restrain infringement of a copyright". *See* 17 U.S.C. § 502. It also provides that any of Defendants' infringing products be impounded and destroyed. *See* 17 U.S.C. § 503.

Furthermore, Rule 65(b) provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

**Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate**

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the Asserted Brand Copyrights on or in connection with Defendants' Online Stores. Such relief is necessary to stop the ongoing harm to the goodwill and reputation of the Asserted Brand, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of Asserted Brand Copyrights. (Mangano Decl. ¶¶ 23-27.)

The need for *ex parte* relief is magnified in today's global economy where counterfeiters and knockoff sellers can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet stores used to display the Asserted Brand Copyrights, without authorization, to sell, and offer for sale, their knockoff Asserted Brand products.

Courts in this district have authorized immediate injunctive relief in similar cases involving

the unauthorized use of copyrights and counterfeiting or knockoff sales. *See, e.g.*, *ZURU (Singapore) Pte., Ltd et al v The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto,* No.: 1-21-CV-02180, Document # 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS copyright protected works and trademark); *Creative Impact Inc. et al v. The 475 Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No.:1:19-cv-05907, Document # 17 (N.D. Ill. Sept. 10, 2019) (granting orders requested herein in a similar case involving plaintiff's BUNCH O BALLOONS trademark). Accordingly, Plaintiff's request for immediate injunctive relief to stop the unauthorized use of the Asserted Brand Copyrights on Defendants' Online Stores is warranted and appropriate.

**Preventing the Fraudulent Transfer of Assets Is Necessary.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that the company's right to an equitable accounting of Defendants' profits from sales of knockoff Asserted Brand products through the unauthorized display of its Asserted Brand Copyrights is preserved. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. (Mangano Decl. ¶¶ 27-32.) Specifically, it appears that the Defendants in this case hold most of their assets in the Republic of China or Hong Kong, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. (*Id.* ¶ 31.)

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709

(5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of their copyright infringement claim, and under 17 U.S.C. § 504(b), the company is "entitled to recover the actual damages suffered…as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." *See* 17 U.S.C. § 504(b).

Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay all profits realized by their unlawful acts. (Compl. at ¶ ¶ 46 – 48.) Such a request for relief supports Plaintiff's demand that any fraudulent asset transfers by Defendants be enjoined. *See Microsoft Corp. v. 9038-3746 Quebec, Inc.,* 2007 WL 3232465, *1 (N.D. Ohio, Nov. 1, 2007) (granting temporary restraining order freezing certain business assets "pursuant to Federal Rule of Civil Procedure 65, the Court's general equitable power, and the Court's statutory authority to order disgorgement of profits pursuant to…17 U.S.C. §504(b)"). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve its requested relief sought in this action.

Moreover, Plaintiff has shown a high likelihood of success on the merits of each of its asserted claims, that it has, and will continue to suffer, immediate irreparable harm because of Defendants' willfully improper activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. (Mangano Decl. ¶¶ 20, 26-29.) Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is warranted.

PLAINTIFF'S FIRST AMENDED MOTION FOR          CASE NO. 1:24-cv-01547-ARW-JC
TEMPORARY RESTRAINING ORDER

**Plaintiff Is Entitled to Expedited Discovery.**

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 882 (7th Cir. 2002). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

As described above, Defendants have registered stores on their online stores, which helps to increase their anonymity by interposing a third party between the consumer and them. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order. (Mangano Decl. ¶ 29.) As such, Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts used by Defendants in furtherance of their copyright infringing aided Asserted knockoff sales operations. (*Id.*) In this regard, Plaintiff's expedited discovery requested in its Proposed Temporary Restraining Order has been limited to include that which is only necessary to prevent further irreparable harm. (*Id.*) This includes discovery of financial accounts necessary to freeze them so that the unauthorized and infringing activities will be contained. (*Id.*)

This Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. *See* Fed.

R. Civ. P. 65(d)(2)(C). As Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Proposed Temporary Restraining Order may have little meaningful effect without also being able to serve necessary discovery, through Federal Rule of Civil Procedure 45 or otherwise, on third parties potentially associated or acting in concert with the Defendants. (Mangano Decl. ¶ 30.) As such, Plaintiff requests that it additionally be permitted to engage in third party discovery to the extent necessary to effectuate the narrow scope of inquiry identified above. (Mangano Decl. ¶ 30.) Accordingly, Plaintiff respectfully requests that its request to conduct expedited discovery be granted on Defendants and any third parties believed to be associated with or acting in concert with Defendants.

**Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case.**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests this Court authorize service of process by electronically publishing a link to the Complaint, the issued TRO, and other relevant documents on a website to which Defendants will be directed and/or by sending an e-mail to any contact addresses associated with Defendants as provided by third party platforms and/or Internet service providers that includes a link to said website. Plaintiff submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from their online platform and their payment processors, is reasonably calculated under all circumstances, to apprise them of the pendency of the action and afford an opportunity to present their objections.

Electronic service is appropriate and necessary in this case because Defendants: (1) have provided false names and physical address information in their registrations for Defendants' Online Stores in order to conceal their locations and avoid liability for their unlawful conduct; and

26

(2) they rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to prosecute this action in an expeditious and necessary manner or to pursue this matter to a complete final judgment.

According to Section 4.1 of the Registrar Accreditation Agreement established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity that registers a domain name is required to "provide to ICANN and publish on its website its accurate contact details including a valid email and mailing address." (Mangano Decl. ¶ 6, Ex. 4.) Contrary to applicable ICANN regulations, it is common practice for counterfeiters and knockoff sellers to register their domain names with incomplete information, randomly typed letters, or omitted cities or states, to avoid full liability. (*Id.* ¶ 17.) And indeed, many of Defendants' names and physical addresses used to register Defendants' Online Stores are incomplete, contain randomly typed letters, fail to include cities or states, and/or use privacy services that conceal this information. (*Id.*) Similarities between Defendants also suggest that many of the aliases used to register Defendants' Online Stores are used by the same individual or entity. (*Id.* ¶ 18.) Despite providing false physical addresses, the registrants of Internet stores such as Defendants' Online Stores, must generally provide an accurate e-mail address so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, online marketplace account operators accepting PayPal, for example, must provide a

valid e-mail address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of Defendants' Online Stores, who operate entirely online, to visit their stores to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)" and "Rule 4" generally) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. Fed. R. Civ. P. 4(f)(3); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, several courts, including courts in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see e.g.*, *Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2020 WL 8093511, at *1 (N.D. Ill. Oct. 28, 2020) ("'Service of process by e-mail has been upheld in circumstances similar to those here.'") (quoting *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016)); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks,*

*Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008)(citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

Plaintiff submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with the Constitutional requirements of due process, particularly given the decision by the registrants of Defendants' Online Stores to conduct their Internet- based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d at 1014-15. As the *Rio Properties* court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule 4 requires only that service be directed by the court and not be prohibited by international agreement. *Id.* There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve Defendants via electronic publication and/or e-mail.

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the registrants of Defendants' Online Stores due to their provision of false and incomplete names and/or street addresses. (Mangano Decl. ¶ 18.) Plaintiff, however, has good cause to suspect the registrants of the respective Online Stores are mainly residents of the People's Republic of China or Hong Kong. The United States and the People's Republic of China are both signatories

to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). (Mangano Decl. ¶ 7, Ex. 5.) The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. ( *Id.*); *see also Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A, Defendants.*, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) ("For these reasons, the Court finds it is inappropriate to interpret China's objections to postal service under the Hague Convention as encompassing service by email."). Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." (Mangano Decl. ¶ 7, Ex. 5.)

As such, federal courts, including courts in this judicial district, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See Hangzhou Chic*, 2021 WL 1222783, at *4 ("[T]he Court finds that China has not 'objected' to email service, and the Court's order of email service pursuant to Rule 4(f)(3) was appropriate."); *see also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, *supra*, 225 F.R.D. at 562 (recognizing that, while "communication via e-mail and over the Internet is comparatively new, such communication has been zealously embraced within the business community").

In addition, the law of the People's Republic of China does not appear to prohibit electronic

service of process. (Mangano Decl. ¶ 8, Ex. 6.) The proposed Temporary Restraining Order provides for issuance of a single original summons[1] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). Accordingly, Plaintiff respectfully requests permission to serve Defendants via e-mail and/or electronic publication.

### A MINIMAL BOND SHOULD BE REQUIRED TO SECURE THE REQUESTED INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal evidence supporting its claims for copyright infringement, false designation, and unfair competition, Plaintiff respectfully requests that this Court require the company post a bond of no more than Five Thousand Dollars and Zero Cents in United States currency ($5,000.00 USD) as security in this action. Similar bonds have been authorized in actions commenced in this judicial district to guard against the improper issuance of injunctive relief where a high likelihood of success on the merits has been

---

[1] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

demonstrated. *See, e.g., Zuru (Singapore) Pte., Ltd., et. al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 1:21-cv-02151, Document #: 14 (N.D. Ill. May 5, 2021) (Leinenweber, J.) ($5,000.00 bond). Accordingly, Plaintiff submits that the same amount of security is appropriate in this action.

## CONCLUSION

Plaintiff's business, which prominently includes their Asserted Brand, and consumers, as well as all prospective customers, are being irreparably harmed through Defendants' unauthorized use of the Asserted Brand Copyrights. Without entry of the requested injunctive relief, Defendants will continue to infringe upon the Asserted Brand Copyrights by leading prospective purchasers and others to their unauthorized websites while making them believe that the products displayed therein are genuine Asserted Brand products – and not the substandard knockoffs eventually delivered by them. As such, issuance of immediate, *ex parte,* temporary injunctive relief, and subsequent preliminary injunctive relief, is necessary to protect Plaintiff's rights in and to its Asserted Brand Copyrights, to prevent further harm to the company and the consuming public, and to preserve the status quo. Accordingly, as argued herein and consistent with previous similar cases from this judicial district, Plaintiff respectfully requests entry of a Temporary Restraining Order in the form submitted herewith and that a hearing be set on an expedited basis on Plaintiff's request for entry of a preliminary injunction based on this submission, together with any additional briefing authorized by the Court.

In addition to the foregoing, Plaintiff requests the Court grant its request to conduct expedited discovery in this matter on Defendants and any party believed to be acting in concert with or associated with Defendants. Furthermore, Plaintiff requests the Court authorize service of

process on Defendants through e-mail and/or electronic publication. Finally, Plaintiff asks the Court to require a bond in the amount of Five Thousand Dollars and Zero Cents USD ($5,000.00 USD) as security for its requested injunctive relief.

DATED: June 28, 2024                    Respectfully submitted,

                                        By: */s/ Shawn A. Mangano*
                                        Shawn A. Mangano (IL No. 6299408)
                                        **BAYRAMOGLU LAW OFFICES LLC**
                                        1540 West Warm Springs Road Ste. 100
                                        Henderson, NV 89014
                                        Tel: (702) 462-5973
                                        Fax: (702) 553-3404
                                        shawnmangano@bayramoglu-legal.com
                                        *Attorneys for Plaintiff*